**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF TEXAS

Case number *(if known)* _____  Chapter __11__

☐ Check if this an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Boynton Beach Florida Behavioral Health Hospital Company, LLC** |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **86-3410154** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **4905 Park Ridge Blvd** <br> **Boynton Beach, FL 33426** <br> Number, Street, City, State & ZIP Code | <br><br> P.O. Box, Number, Street, City, State & ZIP Code |
| **Palm Beach** <br> County | **Location of principal assets, if different from principal place of business** <br><br> Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **https://wellpathcare.com/** |

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor  **Boynton Beach Florida Behavioral Health Hospital Company, LLC**          Case number (*if known*) _____
          Name

---

**7.**  **Describe debtor's business**  A. *Check one:*

■ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

     6222

---

**8.**  **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9.**  **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.
☐ Yes.

| | | | | |
|---|---|---|---|---|
| District | _____ | When | _____ | Case number _____ |
| District | _____ | When | _____ | Case number _____ |

---

Debtor   **Boynton Beach Florida Behavioral Health Hospital Company, LLC**                    Case number (*if known*) _____
_____
Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
☑ Yes.

| | | | | | |
|---|---|---|---|---|---|
| List all cases. If more than 1, attach a separate list | Debtor | **See Rider 1** | Relationship | **Affiliate** |
| | District | **Southern District of Texas** | When _____ | Case number, if known _____ |

**11. Why is the case filed in *this district?***

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No
☐ Yes.

Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No
☐ Yes.  Insurance agency _____
Contact name _____
Phone _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**   .

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

---

**14. Estimated number of creditors**

Consolidated for all Debtors

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☑ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

---

**15. Estimated Assets**

Consolidated for all Debtors

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☑ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

---

Debtor  **Boynton Beach Florida Behavioral Health Hospital Company, LLC**          Case number (*if known*) _____
Name

**16.  Estimated liabilities**

Consolidated for all Debtors

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ■ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor     **Boynton Beach Florida Behavioral Health Hospital Company, LLC**          Case number (*if known*) _____
          Name

| **Request for Relief, Declaration, and Signatures** |
| :-- |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **November 11, 2024**
              MM / DD / YYYY

**X**   **/s/ Timothy Dragelin** _____          **Timothy Dragelin** _____
Signature of authorized representative of debtor          Printed name

Title   **Chief Restructuring Officer and Chief Financial Officer**

**18. Signature of attorney**

**X**   **/s/ Marcus A. Helt** _____          Date   **November 11, 2024** _____
Signature of attorney for debtor                              MM / DD / YYYY

**Marcus A. Helt**
Printed name

**McDermott Will & Emery LLP**
Firm name

**2501 N. Harwood**
**Suite 1900**
**Dallas, TX 75201**
Number, Street, City, State & ZIP Code

Contact phone   **(214) 295-8000**        Email address   **mhelt@mwe.com**

**24052187 TX**
Bar number and State

## Rider 1 to Voluntary Petition

On the date hereof, each of the affiliated entities listed below, including the debtor in this chapter 11 case (collectively, the "Debtors"), has filed or will file a petition for relief in the United States Bankruptcy Court for the Southern District of Texas Houston Division under chapter 11 of title 11 of the United States Code.  The Debtors have, substantially contemporaneously herewith, moved for joint administration of these cases for procedural purposes only under the case number assigned to the chapter 11 case of Debtor Wellpath Holdings, Inc.

| Debtor Name | EIN Number |
|---|---|
| Wellpath Holdings, Inc. | 83-1316669 |
| 901 45th Street West Palm Beach Florida Behavioral Health Hospital Company, LLC | 86-3223831 |
| Alpine CA Behavioral Health HoldCo, LLC | 87-3896299 |
| Behavioral Health Management Systems, LLC | 83-4002952 |
| Boynton Beach Florida Behavioral Health Hospital Company, LLC | 86-3410154 |
| CCS-CMGC Intermediate Holdings, Inc. | 83-1387234 |
| CCS-CMGC Intermediate Holdings 2, Inc. | 83-1435061 |
| CCS-CMGC Parent GP, LLC | 83-1387234 |
| CCS-CMGC Parent Holdings, LP | 83-1459251 |
| CHC Companies, LLC | 20-5114318 |
| Conmed Healthcare Management, LLC | 42-1297992 |
| Correct Care Holdings, LLC | 46-1501406 |
| Correct Care of South Carolina, LLC | 63-1166611 |
| Correctional Healthcare Companies, LLC | 27-1813172 |
| Correctional Healthcare Holding Company, LLC | 46-1580164 |
| Harborview Center, LLC | 83-3654233 |
| HCS Correctional Management, LLC | 30-0999604 |
| Healthcare Professionals, LLC | 35-2416196 |
| Jessamine Healthcare, LLC | 90-0580757 |
| Justice Served Health Holdings, LLC | 93-3605284 |
| Missouri JSH Holdco, LLC | 99-2272235 |
| Missouri JDH Manager, Inc. | 99-2292676 |
| Perimeter Hill RPA, LLC | 93-2014061 |
| Physicians Network Association, Inc. | 75-2450559 |
| Wellpath CFMG, Inc. | 46-1363407 |
| Wellpath Community Care Centers of Virginia, LLC | 86-3398769 |
| Wellpath Community Care Holdings, LLC | 87-4304235 |
| Wellpath Community Care Management, LLC | 87-4329332 |
| Wellpath Education, LLC | 30-0100814 |
| Wellpath Group Holdings, LLC | 27-3482253 |
| Wellpath Hospital Holding Company, LLC | 86-3177119 |
| Wellpath LLC | 32-0092573 |
| Wellpath Management, Inc. | 46-1365058 |

| | |
|---|---|
| Wellpath Recovery Solutions, LLC | 65-0749307 |
| Wellpath SF Holdco, LLC | 99-2418460 |
| WHC, LLC | 88-2673631 |
| WPMed, LLC | 52-1530272 |
| Zenova Management, LLC | 93-4088609 |
| Zenova Telehealth, LLC | 93-4088427 |

**Omnibus Action by Written Consent in Lieu of a Meeting
of the Entities listed on Schedule A**

November 11, 2024

The undersigned being (i) the members of the Special Committee (as defined below), boards of directors or the boards of managers authorized to authorize to execute this consent or (ii) the sole member, as applicable (in each case, a "Governing Body" and, collectively, the "Governing Bodies"), of all of the entities listed on Schedule A (each, a "Company" and, collectively, the "Companies"), hereby consent, in accordance with the organizational documents of each Company and applicable state laws, to the following actions and adopt the following resolutions with respect to each Company in lieu of a meeting effective as of the date hereof. For the avoidance of doubt, each Governing Body is adopting these resolutions as to its respective Company.

**Chapter 11 Filing**

WHEREAS, each Governing Body has considered presentations by the management and the financial and legal advisors of each of the Companies regarding the liabilities and liquidity situation of each of the Companies, the strategic alternatives available to it, and the effect of the foregoing on each Company's business;

WHEREAS, each Governing Body has had the opportunity to consult with the management and the financial and legal advisors of the Companies and fully consider each of the strategic alternatives available to the Companies;

WHEREAS, each Governing Body has been briefed on the proposed voluntary bankruptcy petition to be filed by each respective Company, and have received, reviewed, and considered the recommendations of, and the materials presented by, the management the financial and legal advisors of the Companies regarding the relative risks and benefits of pursuing cases under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the preparation materials provided by the financial and legal advisors, and each Governing Body recommends the adoption of these resolutions;

WHEREAS, the Governing Body of CCS-CMGC Intermediate Holdings 2, Inc., a Delaware corporation ("Holdings 2"), previously established a special committee (the "Special Committee"), adopted that certain Special Committee Charter (the "Special Committee Charter"), and delegated to the Special Committee certain duties, powers, and authority as described in such Special Committee Charter;

WHEREAS, the Special Committee has recommended to the Governing Body of Holdings 2 that the Governing Body of Holdings 2 approve, adopt and ratify the Chapter 11 filing resolutions set forth herein; and

NOW, THEREFORE, BE IT RESOLVED, that in the business judgment of each Governing Body, it is desirable and in the best interests of each Company (including a consideration of its creditors and other parties in interest) that each Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (each a "Chapter 11 Case" and, collectively,

the "Chapter 11 Cases") under the provisions of chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States;

FURTHER RESOLVED, that the Chief Executive Officer, any Vice President, any Assistant Vice President, any Chief Financial Officer, any Treasurer, any Chief Legal Officer, any Secretary or Assistant Secretary, any Manager, any Director, or any other duly appointed officer or other person acting at the direction of the foregoing officers of each Company (collectively, the "Authorized Signatories"), acting alone or with one or more other Authorized Signatories be, and they hereby are, authorized, empowered, and directed to execute and file on behalf of each Company all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all actions that they deem necessary, proper or convenient to obtain such relief, including any action necessary to maintain the ordinary course operation of each Company's business; and

FURTHER RESOLVED, that each Authorized Signatory is authorized, empowered, and directed to (a) execute and file in the name and on behalf of the applicable Company, and under its corporate seal or otherwise, all plans, petitions, schedules, statements, motions, lists, applications, pleadings, orders, and other documents in the Bankruptcy Court, (b) employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers, and other professionals, and (c) take and perform any and all further acts and deeds that such Authorized Signatory, who may act without the joinder of any other Authorized Signatory, deems necessary, proper, or desirable in connection with the Chapter 11 Cases, including (i) negotiating, executing, delivering, and performing under any and all documents, agreements, certificates, and instruments in connection with the transactions and professional retentions set forth in this resolution, (ii) appearing as necessary at all bankruptcy proceedings in the Bankruptcy Court on behalf of the Companies, and (iii) paying all such expenses where necessary or appropriate in order to carry out fully the intent and accomplish the purposes of the resolutions adopted herein; and

FURTHER RESOLVED, that all acts and deeds previously performed by any of the Authorized Signatories or officers of any of the Companies prior to the adoption of the foregoing recitals and resolutions that are within the authority conferred by the foregoing recitals and resolutions, are hereby ratified, confirmed, and approved in all respects as the authorized acts and deeds of the Companies.

RESOLVED FURTHER, that pursuant to the Special Committee's Charter, the Special Committee shall negotiate, make, consider, review, evaluate, approve, authorize, execute, and consummate, if appropriate, certain strategic and/or financial alternatives available to the Companies and their respective businesses, assets, and properties, including, without limitation, a sale, merger, consolidation, restructuring, reorganization, recapitalization, liquidation, or other transaction or related financing or refinancing involving the Companies and/or one or more of its subsidiaries, whether by filing a voluntary petition for relief under the Bankruptcy Code or otherwise; without the need for further review, approval, or consent from the Holdings 2 board of managers.

**Retention of Professionals**

WHEREAS, each Governing Body has considered presentations by the financial and legal

2

advisors of each Company regarding the retention of such financial and legal advisors by each Company.

NOW, THEREFORE, BE IT RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the law firm of McDermott Will & Emery LLP ("McDermott") as general bankruptcy counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and cause to be filed an appropriate application for authority to retain the services of McDermott;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the firm of FTI Consulting, Inc. ("FTI") as financial advisors and to (a) provide Timothy J. Dragelin, as Chief Financial Officer and Chief Restructuring Officer of the Companies, (b) additional personnel and restructuring services to each Company in carrying out its duties under the Bankruptcy Code, and (c) take any and all actions to advance each of the Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and cause to be filed an appropriate application for authority to retain the services of FTI;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the firm of Lazard Frères & Co. LLC("Lazard") as investment banker to (a) represent and assist each Company in carrying out its duties under the Bankruptcy Code and (b) take any and all actions to advance each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and cause to be filed an appropriate application for authority to retain the services of Lazard;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the firm of MTS Partners, LP ("MTS") as investment banker to (a) represent and assist each Company in carrying out its duties under the Bankruptcy Code and (b) take any and all actions to advance each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and cause to be filed an appropriate application for authority to retain the services of MTS;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered and directed to employ the firm of Epiq Corporate Restructuring, LLC ("Epiq") as claims, noticing, solicitation, and administrative agent to (a) represent and assist each Company in carrying out its duties under the Bankruptcy Code and (b) take any and all actions to advance each Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered, and directed

to execute appropriate retention agreements, pay appropriate retainers and fees, and cause to be filed appropriate applications for authority to retain the services of Epiq;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ any other legal counsel, accountants, financial advisors, restructuring advisors, or any other professionals to assist each Company in carrying out its duties and responsibilities and exercising their respective rights under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized, empowered and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary, proper or convenient; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, with the power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Signatories deem necessary, proper, or desirable in connection with each Company's Chapter 11 Case, with a view to the successful prosecution of such case.

### Cash Collateral, Debtor-in-Possession Financing, and Adequate Protection

WHEREAS, each Governing Body has reviewed and considered presentations by the legal and financial advisors regarding the need for financing to fund the Chapter 11 Cases and the postpetition credit facility (the "DIP Financing"), memorialized by in the DIP Loan Documents (as defined below);

NOW, THEREFORE, BE IT RESOLVED, that each Company will obtain benefits from (a) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which may be security for certain prepetition secured lenders under (i) that certain First Lien Credit Agreement, dated as of October 1, 2018 (as may be amended, restated, amended and restated, modified, or supplemented from time to time, the "Prepetition First Lien Credit Agreement"), by and among Wellpath Holdings, Inc. (f/k/a CCS CMGC Holdings, Inc.), as borrower, CCS-CMGC Intermediate Holdings, Inc., as holdings, the other Credit Parties (as defined in the Prepetition First Lien Credit Agreement) from time to time party thereto as guarantors, the lenders from time to time party thereto (the "Prepetition First Lien Lenders"), and UBS AG Stamford Branch (as successor to Credit Suisse AG, Cayman Islands Branch), as administrative agent and collateral agent for the Prepetition First Lien Lenders (the "Prepetition First Lien Agent") and (ii) Second Lien Credit Agreement, dated as of October 1, 2018 (as may be amended, restated, amended and restated, modified or supplemented from time to time, the "Prepetition Second Lien Credit Agreement"), by and among Wellpath Holdings, Inc. (f/k/a CCS CMGC Holdings, Inc.), as borrower, CCS-CMGC Intermediate Holdings, Inc., as holdings, the other Credit Parties (as defined in the Prepetition Second Lien Credit Agreement) party thereto as guarantors, the lenders party thereto from time to time (the "Prepetition Second Lien Lenders"), and UBS AG Stamford Branch (as successor to Credit Suisse AG, Cayman Islands Branch), as administrative agent and collateral agent for the Prepetition Second Lien Lenders (the "Prepetition Second Lien Agent," and together with the Prepetition First Lien Agent,

the "Prepetition Agents") and (b) the incurrence of debtor-in-possession financing obligations pursuant to the terms of that certain Debtor-in-Possession Credit Agreement, dated as of the date hereof (together with any and all exhibits, schedules, and annexes thereto, the "DIP Loan Documents"), by and among, each Company party thereto as a borrower or guarantor, as applicable, the lenders party thereto from time to time (the "DIP Lenders") and the agent(s) thereto (the "DIP Agents," and, together with the Prepetition Agents, the "Agents"), providing for (i) a senior secured postpetition new money term loan credit facility on a superpriority basis and (b) a roll-up of certain outstanding Term Loans under the Prepetition First Lien Credit Agreement (collectively, the "DIP Facility");

FURTHER RESOLVED, that in order to use and obtain the benefits of (a) the DIP Financing and (b) the use of Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, each Company will provide certain liens, claims, and adequate protection to the Prepetition Secured Lenders and to the DIP Lenders to secure the obligations of such Companies under the DIP Facility (the "DIP Obligations") as documented in a proposed orders in interim and final forms (the "DIP Orders," and, collectively with the DIP Loan Documents, the "DIP Documents"), and submitted for approval to the Bankruptcy Court;

FURTHER RESOLVED, that the form, terms, and provisions of the DIP Orders to which each Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are, authorized, adopted, and approved, and each of the Authorized Signatories of each Company be, and hereby is, authorized and empowered, in the name of and on behalf of Each Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the DIP Orders and the other DIP Documents, incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, on the terms or substantially on the terms submitted to each Governing Body, with such changes, additions, and modifications thereto as the officers of each Company executing the same shall approve, such approval to be conclusively evidenced by such officers' execution and delivery thereof;

FURTHER RESOLVED, that, in the judgment of the Governing Body of each Company, after due consultation with the management and the legal and financial advisors of the Companies, that it is desirable each such Company will receive benefits from the DIP Loan Documents and the loans contemplated thereunder, and it is desirable and in the best interest of each such Company, each such Company's equityholders, creditors, and other parties in interest that the form, terms, and provisions of the DIP Documents to which any and all of the Companies are a party, all other documents, agreements, instruments or certificates, intellectual property security agreements, joinders, and consents to be executed, delivered, or filed by each such Company in connection therewith, and the transactions contemplated by the DIP Documents (in each case including the borrowings and other extensions of credit thereunder, and the guaranties, liabilities, obligations, security interest granted and notes issued, if any, in connection therewith) and the consummation of the transactions contemplated thereby or entered into in connection with the DIP Documents be, and hereby are, authorized, adopted, and approved in substantially the form presented to the Governing Body of each Company, together with such changes as may be approved by the Authorized Signatories executing and delivering the same, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that the Governing Body of each Company has determined, after due consultation with the management and the legal and financial advisors of the Companies, that it is desirable, necessary, and in the best interest of each such Company's business and affairs and each such Company's equityholders, creditors, and all other parties in interest that the applicable Companies execute, deliver, and perform the obligations under the DIP Loan Documents and the other DIP Documents, and to consummate the transactions contemplated thereby, including any borrowings, the performance of any guarantees, and the granting of any security interests and liens, and each such Company's execution and delivery of, and the incurrence and performance of its obligations in connection with the DIP Loan Documents, including the guarantee of the Obligations (as defined in the DIP Loan Documents) thereunder, and any other DIP Document to which it is a party, and the consummation of the transactions contemplated thereby or entered into in connection with the DIP Loan Documents, including, any borrowing by any Company under the DIP Loan Documents, are hereby, in all respects, authorized and approved;

FURTHER RESOLVED, that the form, terms, and provisions of the DIP Orders to which each Company is or will be subject, and the actions and transactions contemplated thereby are hereby authorized, adopted, and approved, and each of the Authorized Signatories of each such Company be, and hereby is, authorized and empowered, in the name of and on behalf of each such Company, to negotiate or cause to be prepared and negotiated, and to take such actions necessary to execute, deliver, perform, and cause the performance of, each DIP Order and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents relating to the transactions contemplated thereby to which each such Company is or will be a party, including, any security agreements, pledge agreements, guaranty agreement, assignment documents, notices, financing statements, mortgages, intellectual property filings, tax affidavits, fee letters, and other instruments as any of the DIP Agents or requisite DIP Lenders may reasonably request or as may be necessary or appropriate to create, preserve, and perfect the liens of the Agents, purported or required pursuant to any of the transaction documents to be created in the Collateral (as defined in the DIP Loan Documents (or similar term defined therein)), such agreements with third parties (including bank agency agreements, lockbox agreements, control agreements, landlord agreements, and warehouse letters) relating to the Collateral, any swap contracts or hedging agreements and such other loan documents, guarantees, instruments, certificates and documents as may be reasonably requested by any of the DIP Agents or the requisite DIP Lenders, or as may be required by the DIP Orders, DIP Loan Documents, or any of the foregoing (collectively, with the DIP Orders and DIP Loan Documents, the "DIP Documents"), with such changes, additions, and modifications thereto as any Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by such Authorized Signatory's execution and delivery thereof;

FURTHER RESOLVED, that the incurrence of the liabilities and obligations arising from each DIP Order and each DIP Document by each Company party thereto, (a) is necessary and convenient to the conduct, promotion and attainment of the business of such Companies and (b) may reasonably be expected to benefit such Companies, directly or indirectly;

FURTHER RESOLVED, that each Company, as debtor and debtors in possession under the Bankruptcy Code be, and hereby is, authorized to incur the DIP Obligations, including the borrowing of the loans under the DIP Loan Documents and other obligations related to the DIP Financing, and to undertake any and all related transactions on substantially the same terms as

contemplated under the DIP Documents, including granting liens on and security interests in its assets, including the Collateral, to the Agents to secure such obligations (collectively, the "DIP Transactions");

FURTHER RESOLVED, that each of the Authorized Signatories of each Company, acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized, directed and empowered in the name of, and on behalf of, each such Company, as debtors and debtors in possession, to take such actions as in their discretion is determined to be necessary, desirable, or appropriate to execute the DIP Transactions, including the negotiation, execution and delivery of (a) the DIP Documents, (b) such other instruments, certificates, notices, assignments, and other documents, including, any amendments to any DIP Documents, as may be reasonably requested by the Agents, and (c) such forms of deposit account control agreements, officer's certificates, and compliance certificates as may be required by the DIP Documents, in the name of and on behalf of each Company, with such changes therein as shall be approve by the Authorized Signatories executing the same, with such execution by said Authorized Signatory to constitute conclusive evidence of their approval of the terms thereof, including any departures therein from any form presented to the Governing Bodies of such Companies;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company, acting alone or with one or more other Authorized Signatories, be, and hereby is, authorized, directed and empowered in the name of, and on behalf of, each such Company, as debtors and debtors in possession, to guarantee the DIP Obligations under the DIP Documents and to assign, transfer, pledge, and grant to each Agent, for the ratable benefit of the respective or applicable Secured Parties (as defined in the DIP Loan Documents (or similar term defined therein)), a security interest in all or substantially all the assets of such Company, as collateral security for the prompt and complete payment and performance when due of the DIP Obligations under the DIP Documents to which such Company is a party or which it is subject to and to take or cause to be taken any such actions as may be necessary, appropriate or desirable to cause the Companies to create, perfect and maintain a security interest in such Companies' property or assets constituting Collateral (as defined in the DIP Loan Documents (or similar term defined therein)) as described or contemplated in the DIP Documents;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of each Company with respect to the transactions contemplated by these resolutions, whether existing now or in the future, in each case, as such Authorized Signatory shall deem necessary or desirable in such Authorized Signatory's reasonable business judgment, including the authorization of resolutions and agreements necessary to authorize the execution, delivery, and performance pursuant to the DIP Documents (including certificates, affidavits, financing statements, notices, reaffirmations, amendments, and restatements thereof or relating thereto) as may be necessary, appropriate, or convenient to effectuate the purposes of the transactions contemplated therein;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to file, or to authorize the Agents to file, any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name each Company that the Agents

deem necessary or appropriate to perfect any lien or security interest granted under the DIP Orders and the DIP Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of each Company and such other filings in respect of intellectual and other property of each such Company, in each case as the Agents may reasonably request to perfect the security interests of the Agents under the DIP Orders or any of the other DIP Documents;

FURTHER RESOLVED, that each of the Authorized Signatories of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to take all such further actions, including to pay all fees and expenses payable in accordance with the terms of the DIP Documents, to arrange for and enter into supplemental agreements, amendments, instruments, certificates, or documents relating to the transactions contemplated by any of the DIP Documents, and to execute and deliver all such supplemental agreements, amendments, instruments, certificates, or documents in the name and on behalf of each of the Companies, which shall in their sole judgment be necessary, proper, or advisable in order to perform such Companies' obligations under or in connection with any of the DIP Documents and the transactions contemplated therein (execution by such Authorized Signatory to constitute conclusive evidence of such judgment), and to carry out fully the intent of the foregoing resolution. The performance of any such further act or thing, and the execution of any such document or instrument by any of the Authorized Signatories of the Companies pursuant to these resolutions, shall be conclusive evidence that the same have been authorized and approved by the Companies in every respect; and

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized to execute and deliver to the Agents, as applicable, and to perform the applicable Company's obligations under, all other documents, certificates, instruments, agreements and writings including any interest rate swaps, caps, collars, or similar hedging agreement and any financing statements (or amendments thereto) that may be contemplated by, or required in connection with, the DIP Documents, these resolutions, and the transactions described herein and therein, and to do all such acts and things as any person hereinafter authorized to execute such documents on behalf of such Company determines to be necessary or advisable in connection with or as contemplated by, or for the purpose of giving effect to, or carrying out the provisions of, the DIP Documents, such determination to be conclusively evidenced by such person's signature thereon or completion thereof, as applicable.

## **Restructuring Support Agreement**

WHEREAS, the Governing Bodies of each Company have reviewed and considered presentations by the management and the financial and legal advisors of each such Company regarding the advantages and disadvantages to certain restructuring, sale, and recapitalization transactions contemplated by that certain Restructuring Support Agreement by and among the Companies and the other parties thereto (the "Restructuring Support Agreement"); and

WHEREAS, the Governing Bodies of each Company have had the opportunity to consult with the financial and legal advisors of such Companies with respect to the Restructuring Support Agreement and fully considered each of the strategic alternatives.

NOW, THEREFORE, BE IT RESOLVED, that in the business judgment of the Governing Bodies of each Company, after due consultation with the management and the legal and financial advisors of the Companies, it is desirable and in the best interests of each such Company, its equityholders, its creditors, and all other parties in interest to execute, deliver, perform, and enter into the Restructuring Support Agreement (and any other documents, certificates, instruments, and/or agreements contemplated by the Restructuring Support Agreement) and that each Company's performance of its obligations under the Restructuring Support Agreement (and under any other documents, certificates, instruments, and/or agreements contemplated by the Restructuring Support Agreement) hereby is, in all respects, authorized and approved;

FURTHER RESOLVED, that each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to execute, deliver, certify, file and/or record and perform the Restructuring Support Agreement (and such other documents, certificates, instruments, and/or agreements as may be required by the Restructuring Support Agreement) on behalf of the Companies and perform all of the transactions contemplated thereby; and

FURTHER RESOLVED, that each of the Authorized Signatories is hereby authorized, empowered, and directed to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Restructuring Support Agreement which shall, in such Authorized Officer's sole judgment, be necessary, proper, or advisable, such determination to be conclusively evidenced by such person's signature thereon or completion thereof, as applicable.

## Stalking Horse Asset Purchase Agreement

BE IT RESOLVED, that in connection with the Chapter 11 Cases, the Governing Body of Wellpath Holdings, Inc. and the Additional Sellers (as defined in the Stalking Horse APA) (the "APA Signatories" and each an "APA Signatory") have determined, after due consultation with the management and the legal and financial advisors of the Companies, that it is in the best interests of the Company and its stakeholders that the APA Signatories enter into, and the Companies and their stakeholders will obtain benefits from, the transactions contemplated by that certain Asset Purchase Agreement (the "Stalking Horse APA") with RS Purchaser LLC, on the terms and conditions substantially similar to those set forth in the form previously provided to the Governing Bodies of each APA Signatory, and with such changes thereto as the Authorized Signatories executing the same shall approve, and any other agreements, consents, certificates, amendments, assignments, and instruments in connection therewith (collectively, with the Stalking Horse APA, the "Sale Documents"), in each case subject to approval by the Bankruptcy Court;

FURTHER RESOLVED, that the form, terms, and provisions of each of the Sale Documents and each APA Signatory's performance of its obligations thereunder, are hereby, in all respects confirmed, ratified, and approved;

FURTHER RESOLVED, that any Authorized Signatory is hereby authorized, empowered, and directed, in the name and on behalf of each APA Signatory, to cause such APA Signatory to negotiate and approve the terms, provisions of, and performance of, and to prepare, execute, and deliver the Sale Documents, in the name and on behalf of such APA Signatory, and such other

documents, agreements, instruments, and certificates as such Authorized Officer executing the same considers necessary, appropriate, proper, or desirable to effectuate the transactions contemplated by the Sale Documents, such determination to be conclusively evidenced by such person's signature thereon or completion thereof, as applicable;

FURTHER RESOLVED, that any Authorized Signatory is hereby authorized, empowered, and directed, in the name and on behalf of the APA Signatories, to take all such further actions, including to pay all fees and expenses, in accordance with the terms of the Sale Documents, which shall, in such Authorized Signatory's sole judgment, be necessary, proper, or advisable to perform the APA Signatories' obligations under or in connection with the Sale Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and

FURTHER RESOLVED, that any Authorized Signatory is hereby authorized, empowered, and directed, in the name and on behalf of each APA Signatory, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Sale Documents which shall, in such Authorized Officer's sole judgment, be necessary, proper, or advisable, such determination to be conclusively evidenced by such person's signature thereon or completion thereof, as applicable.

## Amendment to Governing Documents

RESOLVED, that to the extent that any actions authorized by these resolutions would result in any Company that serves as a member of any other Company that is a limited liability company to cease to be a member of such other Company under applicable law, the limited liability company agreement of such other Company is hereby amended to provide that the filing of a voluntary petition in bankruptcy or the other actions authorized under these resolutions shall not cause such member to cease to be a member of such other Company, and in any such event, such other Company shall continue without dissolution.

## General Resolutions

NOW, THEREFORE, BE IT RESOLVED, that the Authorized Signatories of each of the Companies be, and each of them hereby is, authorized, empowered, and directed to execute, acknowledge, verify, deliver, and file any and all such other agreements, documents, instruments, and/or certificates and to take such other actions as may be necessary, proper, or appropriate in order to carry out the intent and purposes of any of the foregoing resolutions;

FURTHER RESOLVED, that each Authorized Signatory shall be, and hereby is, authorized, empowered, and directed, on behalf of and in the name of the Companies, to (a) do and perform all such acts and things and enter into, execute, acknowledge, deliver, and file all such certificates, agreements, acknowledgments, instruments, contracts, statements, and other documents and to take such further actions as such Authorized Signatory may deem necessary or appropriate to effect the intent and accomplish the purposes of the foregoing resolutions, the taking of such action or the execution and delivery thereof to be conclusive evidence of the approval thereof, (b) perform the obligations of the Companies under the Bankruptcy Code and exercise all rights of the Companies under the Bankruptcy Code (including all rights with respect to contracts, agreements, and leases under sections 365 of the Bankruptcy Code), with all such actions to be

performed in such manner, and all such certificates, instruments, guaranties, notices, and documents to be executed and delivered in such form, as the Authorized Signatory performing or executing the same shall approve, the performance or execution thereof to be conclusive evidence of the approval thereof by such Authorized Signatory, the Governing Bodies, and the Companies, and (c) pay fees and expenses in connection with the transactions contemplated by the foregoing resolutions;

FURTHER RESOLVED, that the omission from this written consent of any (a) agreement, document, or other arrangement contemplated by any of the agreements, documents, or instruments described in the foregoing resolutions or (b) action to be taken in accordance with any requirement of any of the agreements or instruments described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Signatory to take all actions necessary, desirable, advisable, or appropriate to consummate, effectuate, carry out, or further the transactions contemplated by, and the intent and purposes of, the foregoing resolutions;

FURTHER RESOLVED, that, to the extent that any Authorized Signatory serves as the sole member, managing member, manager, general partner, partner, or other governing body (collectively, a "Controlling Entity"), in each case, of any direct or indirect subsidiary of any Company (a "Controlled Entity"), each such Authorized Signatory who may act without the joinder of any other Authorized Signatory, be, and hereby is, authorized, empowered, and directed in the name and on behalf of such Controlling Entity (acting for such Controlled Entity in the capacity set forth above, as applicable), to (a) authorize such Controlled Entity to take any action that any Authorized Signatory is authorized to take hereunder and/or (b) take any action on behalf of such Controlled Entity that an Authorized Signatory is herein authorized to take on behalf of such Controlling Entity (including execution and delivery of any authorizing resolutions);

FURTHER RESOLVED, that each Governing Body of each Company has received sufficient notices of the actions and transactions relating to the matters contemplated by any of the foregoing resolutions, as may be required by the organizational documents of each Company, or hereby waive any right to have received such notices;

FURTHER RESOLVED, that each of the members of the board of managers, board of directors, the Special Committee, the sole member, the manager, or the managing member, as applicable, hereby irrevocably waives notice of the time, place, and purposes of a Meeting and any adjournments thereof, to the extent such notice is required by the applicable organizational documents of each Company;

FURTHER RESOLVED, that any and all actions heretofore or hereafter taken and expenses incurred in the name of and on behalf of any Company by any officer, director, or other Authorized Signatory of any Company in connection with or related to the matters set forth or contemplated by any of the foregoing resolutions be, and they hereby are, approved, ratified, and confirmed in all respects as fully as if such actions had been presented to the Governing Bodies for approval prior to such actions being taken;

FURTHER RESOLVED, that any Authorized Signatory of any of the Companies is hereby authorized to certify to third parties with respect to adoption of any of the foregoing resolutions in the form and substance satisfactory to them; and

FURTHER RESOLVED, that this consent may be executed in one or more counterparts, and delivered by electronic means, each of which, when so executed, shall be treated in all manner and respects and for all purposes as one and the same original, written consent, and shall be considered to have the same binding legal effect as if it were an original manually signed counterpart hereof delivered in person.

*[Remainder of page intentionally left blank]*

The undersigned agree that this Omnibus Action by Written Consent in Lieu of a Meeting of the Governing Bodies shall be added to the corporate records of each Company and made a part thereof, and the undersigned further agree that the resolutions set forth hereinabove shall have the same force and effect as if adopted at a meeting duly noticed, held, called and constituted pursuant to each Company's organizational documents and the applicable laws of the jurisdiction in which such Company is organized.

*[Signature pages follow]*

**IN WITNESS WHEREOF**, the undersigned has executed this Omnibus Action by Written Consent as of the date first written above.

BOARD OF MANAGERS OF CCS-CMGC PARENT GP, LLC

Jorge Dominicis

Louis Hallman

Valerie Montgomery Rice

Justin Sapolsky

Rob Wolfson

Kevin Van Culin

Michael Kuritzky

Patrick Bartels

Carol Flaton

*[Signature Page to Omnibus Action by Written Consent*
*(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**GENERAL PARTNER OF CCS-CMGC PARENT HOLDINGS LP:**

**CCS-CMGC Parent GP, LLC,** *a Delaware limited liability company*

By: Jorge Dominicis
Its: Authorized Signatory

**MEMBERS OF THE SPECIAL COMMITTEE OF CCS-CMGC INTERMEDIATE HOLDINGS 2, INC.,**

Patrick Bartels

Carol Flaton

**INDEPENDENT DIRECTORS OF CCS-CMGC INTERMEDIATE HOLDINGS 2, INC., CCS-CMGC INTERMEDIATE HOLDINGS, INC., AND WELLPATH HOLDINGS, INC.**

Patrick Bartels

Carol Flaton

**BOARD OF MANAGERS OF WELLPATH COMMUNITY CARE HOLDINGS, LLC, WHC, LLC, ZENOVA MANAGEMENT, LLC, ZENOVA TELEHEALTH, LLC, MISSOURI JSH HOLDCO, LLC, WELLPATH SF HOLDCO, LLC, JUSTICE SERVED HEALTH HOLDINGS, LLC, JESSAMINE HEALTHCARE, LLC:**

Signed by:

*Louis Hallman*

79A09DA6CD8544B

Louis Hallman

Docusigned by:

*Cindy Watson*

8BA0FD966BB14B4...

Cindy Watson

Signed by:

*Marc Goldstone*

C08C26534568432

Marc Goldstone

*[Signature Page to Omnibus Action by Written Consent
(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**BOARD OF DIRECTORS OF PHYSICIANS NETWORK ASSOCIATION, INC., WELLPATH CFMG, INC., WELLPATH MANAGEMENT, INC., MISSOURI JSH MANAGER, INC.:**

Signed by:

*Louis Hallman*

79A09DA6CD8544B...

Louis Hallman

DocuSigned by:

*Cindy Watson*

8BA0FD966BB14B4...

Cindy Watson

Signed by:

*Marc Goldstone*

C08C265345C8432...

Marc Goldstone

**BOARD OF MANAGERS OF WELLPATH GROUP HOLDINGS, LLC, CORRECT CARE HOLDINGS, LLC, WELLPATH HOSPITAL HOLDING COMPANY, LLC, ALPINE CA BEHAVIORAL HEALTH HOLDCO, LLC:**

Signed by:

*Jeremy Barr*

C7822820C28D4E0...

Jeremy Barr

DocuSigned by:

*Cindy Watson*

8BA0FD966BB14B4...

Cindy Watson

Signed by:

*Marc Goldstone*

C08C265345C8432...

Marc Goldstone

*[Signature Page to Omnibus Action by Written Consent*
*(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**BOARD OF MANAGERS OF PERIMETER HILL RPA, LLC:**

Signed by:

*Jody Coleman*

08C9309C6CEF406...

Jody Coleman

DocuSigned by:

*Cindy Watson*

8BA0FD966BB14B4...

Cindy Watson

Signed by:

*E. Brooke McGee*

E07F7321AD484AA...

Brooke McGee

**SOLE MEMBER OF WELLPATH COMMUNITY CARE MANAGEMENT, LLC:**

Wellpath Community Care Holdings, LLC

Signed by:

By: *Marc Goldstone*

C08C265345C8432...

Name: Marc Goldstone

Title: Secretary

*[Signature Page to Omnibus Action by Written Consent
(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**SOLE MEMBER OF WELLPATH COMMUNITY CARE CENTERS OF VIRGINIA, LLC:**

Wellpath Community Care Management, LLC

By: *Marc Goldstone*
Signed by:
C08C265345C8432...
Name: Marc Goldstone
Title: Secretary

**SOLE MEMBER OF WELLPATH LLC:**

Justice Served Health Holdings, LLC

By: *Marc Goldstone*
Signed by:
C08C265345C8432...
Name: Marc Goldstone
Title: Secretary

**SOLE MEMBER OF BOYTON BEACH FLORIDA BEHAVIORAL HEALTH HOSPITAL COMPANY, LLC AND 901 45TH STREET WEST PALM BEACH FLORIDA BEHAVIORAL HEALTH HOSPITAL COMPANY, LLC, HCS CORRECTIONAL MANAGEMENT, LLC:**

Wellpath LLC

By: *Marc Goldstone*
Signed by:
C08C265345C8432...
Name: Marc Goldstone
Title: Secretary

*[Signature Page to Omnibus Action by Written Consent*
*(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**SOLE MEMBER OF CORRECTIONAL HEALTHCARE HOLDING COMPANY, LLC, CONMED HEALTHCARE MANAGEMENT, LLC, WELLPATH EDUCATION, LLC:**

Jessamine Healthcare, LLC

By: *Marc Goldstone*
Name: Marc Goldstone
Title: Secretary

**SOLE MEMBER OF CHC COMPANIES, LLC:**

Correctional Healthcare Holding Company, LLC

By: *Marc Goldstone*
Name: Marc Goldstone
Title: Secretary

**SOLE MEMBER OF CORRECTIONAL HEALTHCARE COMPANIES, LLC, HEALTHCARE PROFESSIONALS, LLC:**

CHC Companies, LLC

By: *Marc Goldstone*
Name: Marc Goldstone
Title: Secretary

*[Signature Page to Omnibus Action by Written Consent
(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**SOLE MEMBER OF WPMED, LLC:**

Conmed Healthcare Management, LLC

By: *Marc Goldstone*
Name: Marc Goldstone
Title: Secretary

**SOLE MEMBER OF WELLPATH
RECOVERY SOLUTIONS, LLC:**

Correct Care Holdings, LLC

By: *Marc Goldstone*
Name: Marc Goldstone
Title: Secretary

**SOLE MEMBER OF CORRECT CARE OF
SOUTH CAROLINA, LLC:**

Wellpath Recovery Solutions, LLC

By: *Marc Goldstone*
Name: Marc Goldstone
Title: Secretary

**SOLE MEMBER OF HARBORVIEW
CENTER, LLC, BEHAVIORAL HEALTH
MANAGEMENT SYSTEMS, LLC:**

Alpine CA Behavioral Health Holdco, LLC

By: *Marc Goldstone*
Name: Marc Goldstone
Title: Secretary

*[Signature Page to Omnibus Action by Written Consent
(Chapter 11 Filing, Retention of Professionals and DIP Facility)]*

**SCHEDULE A**

| Company |
| --- |
| CCS-CMGC Parent GP, LLC |
| CCS-CMGC Parent Holdings, LP |
| CCS-CMGC Intermediate Holdings 2, Inc. |
| CCS-CMGC Intermediate Holdings, Inc. |
| Wellpath Holdings, Inc. |
| Wellpath Community Care Holdings, LLC |
| Wellpath Community Care Management, LLC |
| Wellpath Community Care Centers of Virginia, LLC |
| WHC, LLC |
| Zenova Management, LLC |
| Zenova Telehealth, LLC |
| Missouri JSH Holdco, LLC |
| Missouri JSH Manager, Inc. |
| Wellpath SF Holdco, LLC |
| Justice Served Health Holdings, LLC |
| Wellpath LLC |
| Boyton Beach Florida Behavioral Health Hospital Company, LLC |
| 901 45th Street West Palm Beach Florida Behavioral Health Hospital Company, LLC |
| Perimeter Hill RPA, LLC |
| HCS Correctional Management, LLC |
| Correctional Healthcare Companies, LLC |
| Jessamine Healthcare, LLC |
| Correctional Healthcare Holding Company, LLC |
| CHC Companies, LLC |
| Physicians Network Association, Inc. |
| Conmed Healthcare Management, LLC |
| WPMed, LLC |
| Healthcare Professionals, LLC |
| Wellpath CFMG, Inc. |
| Wellpath Management, Inc. |
| Wellpath Education, LLC |
| Wellpath Group Holdings, LLC |
| Correct Care Holdings, LLC |
| Wellpath Recovery Solutions, LLC |
| Correct Care of South Carolina, LLC |
| Wellpath Hospital Holding Company, LLC |
| Alpine CA Behavioral Health Holdco, LLC |
| Harborview Center, LLC |
| Behavioral Health Management Systems, LLC |

Fill in this information to identify the case:

Debtor name: Wellpath Holdings, Inc,, et al..

United States Bankruptcy Court for the: Southern District of Texas

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Alpine CA Behavioral Holdco, LLC | 2120 Alpine Blvd, Alpine, CA 91901 (619) 445-2644 | Unsecured Noteholder | | $17,974,459 | | $17,974,459 |
| 2 | AU Medical Center Inc. | 1120 15th Street BA-2612, Augusta GA 30912 (709) 828-6436 corp_acctg-cash@augusta.edu | Trade | | $11,992,022 | | $11,992,022 |
| 3 | Correct RX Pharmacy Services, Inc. | 1352-C Charwood Road, Hanover MD 21076 (410) 636-9500 AccountsReceivable@correctrxpharmacy.com | Trade | | $9,547,633 | | $9,547,633 |
| 4 | Diamond Drugs, Inc. | 645 Kolter Drive, Indiana PA 15701 (724) 465-4200 mshawley@diamondpharmacy.com | Trade | | $7,419,885 | | $7,419,885 |
| 5 | Shelby Co Healthcare Corp dba Regional One Health | P.o. Box 1000 Dept 865, Memphis TN 38148-0865 (901) 545-7651 kericksen@regionalonehealth.org | Trade | | $5,431,262 | | $5,431,262 |
| 6 | Mclaren Greater Lansing | 401 W Greenlawn, Lansing MI 48910 (517) 975-6000 | Trade | | $5,272,724 | | $5,272,724 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim — if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| | | contact@mclaren.org | | | | | |
| 7 | Medical Center Of Central Georgia, Inc. | 777 Hemlock St, Macon GA 31201<br><br>(478) 633-1000 | Trade | | $4,401,175 | | $4,401,175 |
| 8 | Name on file | Information on file | Litigation Settlement | | $4,291,667 | | $4,291,667 |
| 9 | Select Specialty Hospital - Augusta Inc. | 1537 Walton Way, Augusta GA 30904-3764<br><br>(706) 731-1200<br><br>augusta@selectspecialty.com | Trade | | $4,258,459 | | $4,258,459 |
| 10 | Name on file | Information on file | Litigation Settlement | | $3,513,184 | | $3,513,184 |
| 11 | Spalding Regional Hospital, Inc. | 601 S 8th St, Griffin GA 30224-4213<br><br>(770) 228-2721 | Trade | | $3,112,964 | | $3,112,964 |
| 12 | Laboratory Corporation of America | P.O. Box 12140, Burlington NC 27216-2140<br><br>(800) 788-9893<br><br>cashposters@labcorp.com | Trade | | $2,976,220 | | $2,976,220 |
| 13 | Pharmacorr, LLC | 7400 Plaza Mayor Blvd, Ste 100, Oklahoma City OK 73149<br><br>(405) 698-1285<br><br>rachel.irving@pharmacorr.com | Trade | | $2,786,878 | | $2,786,878 |
| 14 | Prime Healthcare Foundation, Inc. | 11 Upper Riverdale Rd Sw, Riverdale GA 30274-2615<br><br>(909) 235-4400<br><br>info@primehealthcare.com | Trade | | $2,711,454 | | $2,711,454 |

Debtor ___Wellpath Holdings, Inc., et al.___    Case number (if known) _____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 15 | Name on file | Information on file | Litigation Settlement | | $2,500,000 | | $2,500,000 |
| 16 | Fresno Community Hospital and Medical Center | 2823 Fresno St, Fresno CA 93721-1324 (559) 459-6000 | Trade | | $2,396,503 | | $2,396,503 |
| 17 | McKesson Medical – Surgical Inc. | P.O. Box  936279, Atlanta GA 31193-6279 (800) 220-4493 MMS.EFT@Mckesson.com | Trade | | $2,350,965 | | $2,350,965 |
| 18 | UP Health System - Marquette | 850 W Baraga Ave, Marquette MI 49855-4550 (906) 449-3000 upmarquette@verisma.com | Trade | | $2,222,534 | | $2,222,534 |
| 19 | Sonata Software North America, Inc. | 39300 Civic Center Drive Ste-270, Fremont CA 94538 (650) 268-1300 dipannita.s@sonata-software.com | Trade | | $2,210,841 | | $2,210,841 |
| 20 | Broward Health Medical Center | 1600 S Andrews Ave, Fort Lauderdale FL 33316 (954) 473-7575 credentials@browardhealth.org | Trade | | $2,053,933 | | $2,053,933 |
| 21 | Broward Health North | 201 E Sample Rd, Deerfiled Beach FL 33064 (954) 941-8300 credentials@browardhealth.org | Trade | | $1,983,534 | | $1,983,534 |
| 22 | Memorial University Medical Center - Savannah | 4700 Waters Ave, Savannah GA 31404-6220 (912) 350-8000 PARA.HCARecordsRequestFL@hcahealthcare.com | Trade | | $1,933,546 | | $1,933,546 |

Debtor ___Wellpath Holdings, Inc., et al.___                                                                                       Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 23 | The Medical Center | 710 Center St, Columbus GA 31901-1527<br><br>(706) 571-1120<br><br>recordsrequest@piedmont.org | Trade | | $1,926,812 | | $1,926,812 |
| 24 | St. Joseph Mercy Hospital | 5301 E Huron River Dr, Ann Arbor MI 48106-0993<br><br>(734) 712-2808<br><br>andersoh@trinity-health.org | Trade | | $1,805,982 | | $1,805,982 |
| 25 | Phoebe Putney Memorial Hospital | 417 W 3Rd Ave, Albany GA 31701-1943<br><br>(229) 312-1000<br><br>himroi@phoebehealth.com | Trade | | $1,776,068 | | $1,776,068 |
| 26 | Crisp Regional Hospital | 902 7Th St N, Cordele GA 31015<br><br>(229) 276-3100<br><br>info@crispregional.org | Trade | | $1,764,422 | | $1,764,422 |
| 27 | Florida Hospital Waterman | 1000 Waterman Way, Tavares FL 32778-5266<br><br>(352) 253-3333 | Trade | | $1,685,168 | | $1,685,168 |
| 28 | Piedmont Augusta Hospital | 1350 Walton Way, Augusta GA 30901-2612<br><br>(706) 722-9011<br><br>recordsrequest@piedmont.org | Trade | | $1,526,858 | | $1,526,858 |
| 29 | HCA Florida Northwest Hospital | 2801 N State Rd 7, Margate FL 33063-5596<br><br>(305) 652-8000<br><br>PARA.HCARecordsRequestFL@hcahealthcare.com | Trade | | $1,449,452 | | $1,449,452 |
| 30 | Name on file | Information on file | Litigation Settlement | | $1,348,213 | | $1,348,213 |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-[_____] ([____]) |
| Debtors. | (Joint Administration Requested) |

**CONSOLIDATED CORPORATE OWNERSHIP
STATEMENT AND LIST OF EQUITY INTEREST HOLDERS
PURSUANT TO FED. BANKR. P. 1007(A)(1), 1007(A)(3), AND 7007.1**

Pursuant to rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and to enable the Judges to evaluate possible disqualification or recusal, attached hereto as **Exhibit A** is a corporate structure chart (the "Corporate Structure Chart") reflecting the ownership interests of CCS-CMGC Parent GP, LLC, CCS-CMGC Parent Holdings, L.P. and its direct and indirect subsidiaries (collectively, the "Debtors"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). The Debtors respectfully represent, as of the date hereof, the following:

1. Each of the Debtors identified on the Corporate Structure Chart is owned in its entirety by its direct parent.

2. The equity securities of each of the Debtor entities are privately held and a list of the issued and outstanding common stock of CCS-CMGC Parent GP, LLC and CCS-CMGC Parent Holdings, L.P., prepared in accordance with Bankruptcy Rule 1007(a)(3), is attached hereto as **Exhibit B**.

3. Other than as set forth in the exhibits hereto, each of which is incorporated herein by reference, no other corporation (as such term is defined in section 101(9) of title 11 of the United States Code), public or private, owns 10% or more of any class of a Debtor's common equity interests.

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for the Chapter 11 Cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

**<u>Exhibit A</u>**

**Corporate Structure Chart**



wellpath℠
Legend
Debtor Entity
CCS-CMGC Parent GP, LLC
Investors
CCS-CMGC Parent Holdings, LP
CCS-CMGC Intermediate Holdings 2, Inc. (DE)
CCS-CMGC Intermediate Holdings, Inc. (DE)
Wellpath Holdings, Inc. (DE) (FKA CCS-CMGC Holdings, Inc.)
Wellpath Community Care Holdings, LLC (DE)
Wellpath Community Care Management, LLC (DE)
Wellpath Community Care Centers of Virginia, LLC (DE)
WHC, LLC (DE)
Zenova Management, LLC (DE)
Zenova Telehealth, LLC (DE)
Missouri JSH HoldCo, LLC (DE)
Missouri JSH Manager, Inc. (DE)
1%
99%
Wellpath St. Louis, LLC (MO)
Wellpath SF HoldCo, LLC (DE)
Justice Served Health Holdings, LLC (DE)
Wellpath LLC (DE) (FKA Correct Care Solutions, LLC)
Boynton Beach Florida Behavioral Health Hospital Company, LLC (DE)
901 45th Street West Palm Beach Florida Behavioral Health Hospital Company, LLC (DE)
Perimeter Hill RPA, LLC (DE)
HCS Correctional Management, LLC (DE) (FKA Health Cost Solutions, LLC)
HH Risk, LLC (TN)
Jessamine Healthcare, LLC (DE)
Correctional Healthcare Holding Company, LLC (DE)
CHC Companies, LLC (DE)
Correctional Healthcare Companies, LLC (DE)
Physicians Network Association, Inc. (TX)
Healthcare Professionals, LLC (CO)
Conmed Healthcare Management, LLC (DE)
WPMed, LLC (MD) (FKA Conmed, LLC)
Wellpath Education, LLC (MD) (FKA Correctional Mental Health Services LLC)
Wellpath CFMG, Inc. (DE) (FKA CFMG Holdings Corp.)
Wellpath Management, Inc. (DE) (FKA Correctional Medical Group Companies, Inc.)
Wellpath Group Holdings, LLC (DE) (FKA Correct Care Solutions Group Holdings, LLC)
Correct Care Holdings, LLC (FL)
Wellpath Recovery Solutions, LLC (FL) (FKA Correct Care, LLC)
Correct Care of South Carolina, LLC (DE)
Wellpath Hospital Holding Company, LLC (DE)
Alpine CA Behavioral Health HoldCo, LLC (DE)
Harborview Center, LLC (CA)
Behavioral Health Management Systems, LLC (CA)

**Exhibit B**

**List of Ownership Interests**

| CCS-CMGC Parent GP, LLC | | |
|---|---|---|
| **Equityholder** | **Address of Equityholder** | **Percentage of Equity Held** |
| H.I.G. CCS-CMGC, L.P., | 1450 Brickell Avenue, 31st Floor, Miami, FL 33131 | 100% |

| CCS-CMGC Parent Holdings, L.P. | | |
|---|---|---|
| **Equityholder** | **Address of Equityholder** | **Percentage of Equity Held** |
| Alpine Special Treatment, Inc. | c/o Alpine Special Treatment, Inc.: 2120 Alpine Blvd. Alpine, CA 91901 | 17% of Preferred Units |
| Mike Doyle | c/o Alpine Special Treatment, Inc.: 2120 Alpine Blvd. Alpine, CA 91901 | 17% of Preferred Units |
| Victoria Klein | c/o Alpine Special Treatment, Inc.: 2120 Alpine Blvd. Alpine, CA 91901 | 33% of Preferred Units |
| Kristin Allred | c/o Alpine Special Treatment, Inc.: 2120 Alpine Blvd. Alpine, CA 91901 | 33% of Preferred Units |
| H.I.G. Advantage Buyout Fund, L.P. | 1450 Brickell Avenue, 31st Floor, Miami, FL 33131 | 86% of all non-Preferred Units |
| Other Equityholders[1] | | 14% of all non-Preferred Units |

---

[1] There are approximately 180 other equityholders in CCS-CMGC,LP, including current and former employees, directors, and officers, each of which holds a *de minimis* amount of equity.

**Fill in this information to identify the case:**

Debtor name    **Boynton Beach Florida Behavioral Health Hospital Company, LLC**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF TEXAS

Case number (if known)    _____

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    **12/15**

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule* _____
■   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
■   Other document that requires a declaration    **Statement of Corporate Ownership and List of Equity Security Holders**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **November 11, 2024**     X   **/s/ Timothy Dragelin**
                                         Signature of individual signing on behalf of debtor

                                        **Timothy Dragelin**
                                        Printed name

                                        **Chief Restructuring Officer and Chief Financial Officer**
                                        Position or relationship to debtor